**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THERESA COLE, ) | |
| ) | CASE NO.   1:07-cv-1989 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff, Theresa Cole ("Cole"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Cole's applications for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this court affirms the decision of the Commissioner.

I. Procedural History

Cole filed an application for DIB and SSI in April 2004, alleging disability as of February 5, 2001 due to degenerative disc disease, arthritis in her knees, and depression. Her application was denied initially and upon reconsideration. Cole timely requested an administrative hearing.

Administrative Law Judge Edmund Round ("ALJ") held a hearing on November 24, 2003. Cole was represented by counsel and testified on her own behalf. Sam Perlstein testified as a vocational expert. The ALJ issued a decision on February 25, 2004, finding that Cole was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

Cole filed an appeal to this court on May 19, 2005. She argued that the ALJ failed to give adequate reasons for discounting her treating physician's opinion. The court agreed with Cole, and District Judge James S. Gwin remanded the case to the ALJ for further proceedings on July 24, 2006.

On January 3, 2007, the ALJ held a second hearing at which Cole was represented by counsel and testified on her own behalf. Nancy Borgeson testified as a vocational expert ("VE"). The ALJ issued a decision on February 21, 2007 in which he determined that Cole was not disabled. The Appeals Counsel declined further review, and the ALJ's decision became the final decision of the Commissioner on June 6, 2007.

Cole filed a second appeal to this court on July 3, 2007. Cole alleges that the ALJ made two errors in finding her not disabled: (1) he improperly relied on the VE's testimony; and (2) he failed to give substantial weight to all of her treating physician's opinions regarding her limitations. The Commissioner denies that the ALJ erred in finding Cole not

2

disabled.

## II. Evidence

*A. Personal and Vocational Evidence*

Cole was born on September 5, 1958 and was 42 years old at the time of her alleged onset. She has a GED and past relevant work experience as a letter carrier.

*B. Medical Evidence*

Margaret Kravanya, M.D., began treating Cole in 1993. By 1995, Cole began experiencing pain and stiffness in her back, knees, and feet. Transcript ("Tr."), p. 389. In 1998, after Cole suffered a contusion and fracture in her foot, Dr. Kravanya diagnosed Cole as suffering from myofibrositis in her back, a recurring anxiety-stress disorder, and recurring gastritis. Tr. at 397-98. The doctor advised that Cole change to a job that did not require continuous lifting.

On June 21, 1999, Cole reported to South Pointe Hospital complaining of lower back pain following an automobile accident. Tr. at 364-69. The attending physician diagnosed lumbar strain and trapezius spasm and advised no heavy lifting for five days. An x-ray revealed no abnormalities. Tr. at 370.

On July 28, 2000, Dr. Kravanya wrote a letter on behalf of Cole opining that Cole was permanently partially disabled. Tr. at 393. Dr. Kravanya asserted that Cole suffered from thoracic and lumbar myofibrositis, bilateral knee instability, multiple foot injuries, anxiety stress reaction, and a depressive disorder. According to Dr. Kravanya, Cole could work only limited hours; was restricted in her lifting, bending, twisting, and standing; and suffered from disturbances in her thought processes that made her a danger to herself and others.

3

Dr. Kravanya wrote a letter to the Postal Service on September 20, 2000 in which she repeated her diagnoses. Tr. at 183. Dr. Kravanya specified that Cole could not work more than four hours a day, including no more than two hours of street delivery and two hours of indoor activity with no walking.

Cole visited Dr. Kravanya on December 1, 2000 complaining of upper and lower back pain and stiffness, weakness in her knees, foot pain, depression, and anxiety. Cole also reported that counseling, Zyprexia, and Zoloft had helped her mental condition. Physical examination revealed reduced flexion, extension, and radial movement, and the doctor noted that Cole was unable to lift, bend, or push for any length of time. Cole reported an inability to concentrate on work duties and that the job was exacerbating her physical and mental problems. Dr. Kravanya opined that Cole's prognosis was poor.

On December 27, 2000, Dr. Kravanya wrote a second letter to the Postal Service. She repeated her diagnoses, adding that Cole's depression was accompanied by psychosis. Dr. Kravanya also noted that Cole's subjective symptoms included thoracic and lumbar paravertabral muscular spasms, limited range of motion of the thoracic and lumbar spine, edema of the muscular tissues, inability to heel-toe walk, anger, sweats, shaking, headache, nausea, tachycardia, and sleep disorder. The doctor reported that physical examination of Cole revealed extreme thoracic and lumbar paravertabral muscular spasms and edema with decreased range of motion and weakness of the lumbar muscles, edema of the knees bilaterally with weakness in the quadriceps, bilateral foot pain indicating plantar fasciitis, anxiety, and stress. Dr. Kravanya referenced a recent mental status examination in referring to Cole's mental health problems. She also indicated that Cole's treatment had included Zyprexia, Zoloft, anti-inflammatory medication, anti-spasmodic

4

medication, analgesics, and physical therapy. Dr. Kravanya opined that Cole's conditions were stable with medication and counseling and avoidance of lifting, pushing, and bending. She described Cole as "fragile" with a poor prognosis for full recovery. Tr. at 185. The doctor also noted that Cole had missed work in the past because of flare-ups in her conditions and that continued exposure to her work environment would cause her condition to deteriorate.

Cole reported a stress flare-up to Dr. Kravanya on February 5, 2001. Tr. at 179. Dr. Kravanya noted that Cole was seeing a psychologist and continued to take Zyprexia and Zoloft. Cole reported difficulty in maintaining walking, standing, and bending, and a physical examination revealed edema in knees, legs, and feet. Examination also revealed paraspinal muscle spasms and reduced range of motion in flexion, extension, and radial movement.

Dr. Kravanya completed a questionnaire from the Bureau of Disability Determination ("Bureau") on March 26, 2001. Tr. at 118-125. The doctor stated that Cole suffered from pain in her thoracic and lumbar spine and bilaterally in her knees and feet; muscle spasms paravertebrally in her thoracic and lumbar spine; weakness in both legs against resistance; an inability to bend knees to perform a squat; and reduced flexion, extension, side bending, and rotation. The doctor also found tenderness paravertebrally in the thoracic and lumbar spine; heat in the muscles of the spine and knees; and swelling, redness, and edema in the knees. Dr. Kravanya reported no sensory changes or problems with fine or gross manipulation and no muscle atrophy, deformity, contracture, crepitation, synovial thickening, tophi, or nodules. An x-ray performed in 1999 was within normal limits. Cole's gait was slow but steady, and she did not require any aids for ambulation. Dr. Kravanya

opined that Cole had suffered no loss of manual dexterity or grip strength and that she could open a jar, button her clothes, write legibly, pick up small objects, hold a pencil, or use a small keyboard with either hand.  In describing Cole's mental condition, the doctor reported that Cole suffered from an anxiety-depressive disorder with psychosis, making her argumentative and easily provoked by the pressure of meeting goals.  She assessed Cole's ability to care for her personal needs as fair and her intellectual function as below average.  The doctor also reported that Cole had occasional impairments in her memory due to medication and opined that Cole had a reduced ability to perform housework.  Dr. Kravanya's diagnosis was thoracic and lumbar myofibrositis, bilateral knee instability, anxiety and stress disorder, and depressive/psychotic disorder.  Dr. Kravanya rated Cole as poor in her ability to sit, stand, walk, bend, lift, and carry related to her job performance and opines that Cole was confused at times with poor sustained concentration and persistence.[1]

Cole complained of back pain to Dr. Kravanya on November 28, 2001.

Dr. Kravanya completed a physical capacity assessment of Cole on December 16, 2002. Tr. at 384-85.  The doctor opined that Cole could lift up to five pounds, walk for two hours in an eight-hour work day, and walk for one half hour without interruption.  She supported these opinions by referring to Cole's pain and instability in her lower back and knees from injuries, as revealed by physical examination.  Dr. Kravanya did not note that Cole's ability to sit was affected by her condition or that she needed to lie down during an

---

[1] The Commissioner cites Tr. at 151 for the proposition that an examination of Cole on May 10, 2001 was within normal limits.  Close inspection of that document reveals that the abbreviation "WNL" was restricted to describing a particular referent that is illegible.

eight-hour work day. The doctor also opined that Cole should rarely or never climb, balance, stoop, crouch, kneel, crawl, or push/pull; should only occasionally reach, handle, and feel; and should avoid heights, moving machinery, and extremes of temperature. She referred to Cole's reduced range of motion in her lumbar spine and knees, weakness in her knees, and the effects of temperature on Cole in justifying these restrictions. Dr. Kravanya also noted that Cole had been prescribed a brace.

Dr. Kravanya completed a second physical capacity assessment on May 8, 2003. Tr. at 386-87. The doctor opined that Cole could lift up to five pounds, walk for one hour in an eight-hour work day, and walk for one half hour without interruption. She supported these opinions by referring to Cole's pain, instability, weakness, and stiffness in her lower back and knees from injuries and plantar fasciititis as revealed by physical examination. Dr. Kravanya did not believe that Cole's ability to sit was affected by her condition or that she needed to lie down during an eight-hour work day. The doctor also opined that Cole should rarely or never climb, balance, stoop, crouch, kneel, crawl, or push/pull; should only occasionally reach, handle, and feel; and should avoid heights, moving machinery, and extremes of temperature. She referred to Cole's instability and weakness in her lumbar spine and knees, weakness in her knees, and the effects of temperature on Cole in justifying these restrictions. Dr. Kravanya again noted that Cole had been prescribed a brace. The doctor also noted that anxiety and depression affected Cole's social and interpersonal relationships.

Dr. Kravanya wrote a letter to Cole's counsel on May 9, 2003. The doctor described Cole's condition as follows:

Ms. Cole's diagnoses have included: cervical, thoracic and lumbar strain with

7

> myofibrositis; bilateral knee instability; feet injuries with plantar fascitis [sic]; anxiety-stress disorder and depression with psychosis; gastritis and irritable bowel syndrome. Subjective symptoms related to these diagnoses included neck and back pain, stiffness of neck and back; feet and knee pain and stiffness, headache, dizziness, muscle weakness, sweats, palpitations, tremors, nausea, abdominal cramps, anger, irritability, fatigue, difficulty concentrating and sleep disorder. Objective symptoms related to these diagnoses included cervical, thoracic and lumbar paravertebral muscle spasm and edema with tenderness to palpation of these muscle and restricted range of motion of the spine, bilateral knee instability with associated muscle weakness; difficulty with weight-bearing due to plantar tendon inflammation; abdominal tenderness, increased bowel sounds; tachycardia.
>
> Upon examination on 12/01/2000, it was my recommendation that Ms. Cole be placed on permanent total disability due to her physical and emotional conditions. Multiple attempts to return to work, failed [sic] due to escalation of her symptom complex related to stress factors with conflicting inter-personal relationships and environmental pressures related to her job. Mc. Cole was receiving psychological counsel and anti-anxiety/anti-depression medications, but her medical condition was fragile and deteriorating.
>
> It is my medical opinion, within reasonable medical certainty, that her symptom-complex and diagnoses were a direct result of her job environmental circumstances working for the U.S. Postal Service.

Tr. at 392.

On May 15, 2003, Cole complained to Dr. Kravanya of neck and back pain with stiffness and a headache. Tr. at 165. She also reported that her depression and anxiety were stable with Zoloft, Geodon, and Zyprexia. Physical examination revealed cervical, thoracic, and lumbar muscular spasm with decreased range of motion in flexion, extension, side bending, and rotation. There was also tenderness to palpation at the C4-7 levels and L1-5 levels bilaterally.

Dr. Kravanya completed a third physical capacity assessment on May 30, 2003. Tr. at 162-63. The assessment was substantially the same as the assessment of May 8, 2003, except that there was no entry for an estimate of Cole's ability to push/pull. The doctor added the following at the end of the assessment form:

> Due to anxiety[,] stress and depression disorder, requiring medication, [Cole's] social and inter-personal relationships can provoke emotional changes, such as anger, crying, heart palpitations, dizziness, abdominal cramps[,] difficulty concentrating, and sleep disorder. In my medical opinion, within reasonable medical certainty, she is not a candidate for employment due to her physical and emotional conditions.

Tr. at 163.

Franklin D. Krause, M.D., examined Cole at the request of the Bureau on September 15, 2005. Tr. at 414-20. Dr. Krause noted that Cole had not had back surgery and had lower back pain but no radiculopathy or incontinence. There was some reduced range of motion in Cole's back. Dr. Krause also found a reduced range of motion in Cole's knees due to pain and obesity but no locking, click, grinding, or warmth. He reported that Cole did cooking, cleaning, and shopping and was capable of self-care, and he opined that Cole could stand for an hour, walk for 30 minutes, and sit without difficulty. Dr. Krause diagnosed Cole as having emotional problems with substance abuse, low back pain, knee pain with full range of motion, and significant obesity. Accompanying x-rays of Cole's back revealed some narrowing of the L2-3 space and anterior spurring related to an early degenerative disc. The x-ray was otherwise normal.

On October 13, 2005,[2] Dr. Kravanya completed another questionnaire for the Bureau. Tr. at 388-90. She diagnosed Cole as suffering from depression disorder, anxiety-stress disorder, thoracic and lumbar myofibrositis, bilateral knee instability, and plantar fasciitis. The doctor stated that Cole's pain and stiffness in her back, knees, and feet dated from 1995 and referred to attached sheets for data regarding Cole's symptoms and the

---

[2] The Commissioner mistakenly cites this report as dated June 14, 2005. The notation on tr. at 389 that Dr. Kravanya last saw Cole on July 14, 2005 makes this unlikely.

9

onset of Cole's other conditions. Dr. Kravanya cited decreased range of motion of the lumbar spine and intermittent edema of the muscles of the paravertebral muscles and knees as clinical examination findings related to Cole's diagnoses and also referred the reader to attached tests. The doctor noted that depression, anxiety, pain, and stiffness were under control with medication but that environmental and physical activity exacerbated Cole's symptoms. Dr. Kravanya concluded:

> Patient unable to bend, lift, push, due to history of work related injuries to back, knees, feet, ankles. Patient has poor social and inter-personal relationship potential--easily provoked anxiety and anger with difficulty with concentration. In my medical opinion, unable to maintain employment based on medical history and mental and physical conditions.

Tr. at 390.

In December 2005 Dr. Kravanya completed a fourth questionnaire assessing Cole's condition. Tr. at 449. Dr. Kravanya diagnosed Cole as suffering from cervical, thoracic, and lumbar myofibrositis; bilateral knee instability; plantar fasciitis; anxiety stress disorder; and depression disorder with psychosis, gastritis, and irritable bowel syndrome. The doctor ascribed these conditions to multiple traumatic injuries to Cole's neck, back, feet, and knees. These injuries occurred on February 17, 1993, December 16, 1994, April 17, 1998, and June 21, 1999 and caused pain and restricted range of motion in the affected areas. Dr. Kravanya referred to reports attached to the questionnaire when asked for findings or testing related to these opinions. The doctor also noted that Cole had suffered from anxiety, stress, and depression since August 30, 2000 and had received psychiatric counseling since that time.

*C.    Hearing testimony*

Cole testified at her hearing in November 2003 that she suffered from spasms in her

10

back; weakness, pain, and stiffness in knees; plantar fasciitis; and lack of motivation. Tr. at 38-40. According to Cole, she had good days and bad days with regard to her depression, with 2-3 bad days a week. Tr. at 39. Cole estimated that she could stand for 40 minutes to an hour, walk for about 20 minutes continuously, perhaps lift ten pounds, and had some problems with sitting without moving for more than 30 minutes. Tr. at 40. Cole also testified that Dr. Kravanya had treated her for about ten years and that she had seen the doctor about once a month. Tr. at 41. Cole reported seeing a psychiatrist for about three years, at first every other week and, more recently, monthly. Tr. at 42. Cole testified that she did a little cooking, laundry, and shopping with help from her children. She also reported having no hobbies, going to church a couple times a month, and rarely going out with, or being visited by friends. Tr. at 43-44.

At her second hearing, the ALJ posed the following hypothetical to the VE: Suppose a 48 year old worker; the equivalent of a high school education; no relevant vocational training beyond training on the job; limited to sedentary work; can lift, carry, push, or pull up to five pounds; must sit or stand at will; cannot use ladders, ropes, or scaffolds; can occasionally use stairs or ramps; can occasionally balance, stoop, kneel, crouch, or crawl; must avoid heights and moving machinery; and is limited to simple routine, low-stress tasks with limited and superficial interaction with supervisors and co-workers and no interaction with the public. In response to questions about such a worker, the VE opined that the worker could not perform Cole's past relevant work but could perform such jobs in the national economy as sedentary assembler, visual inspector, and some office clerk jobs. The VE stated that there were 2,150 jobs in northeast Ohio for a sedentary assembler, 450 jobs in northeast Ohio for a visual inspector, and 2,300 jobs in northeast Ohio for sedentary

11

and unskilled clerks.

Cole's attorney asked the vocational expert if there would be any jobs that could be performed by the hypothetical individual if she were restricted to lifting no more than 5 pounds. The VE replied that this would reduce the number of available jobs by about 25%. Cole's attorney then asked if a sit-stand option were added if there still would be a significant number of jobs that the individual could perform. The VE said that this would not affect the assembler or inspector jobs but that the individual could not stand for long periods of time in the job as clerk. The attorney then added a no stress limitation, and the VE opined that all of the limitations added by the attorney would reduce the number of clerk jobs by no more than another 25%.

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a

12

finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1. Ms. Cole meets the insured status requirements of the Social Security Act through September 30, 2008.

2. Ms. Cole has not engaged in substantial gainful activity since November 1, 2000, the alleged onset date . . . .

3. Ms. Cole has the following severe impairments: cervical, thoracic and lumbar myofibrositis . . . ; bilateral knee instability . . . ; and polysubstance abuse in reported remission . . . .

4. Ms Cole does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . .

5. Ms. Cole retains the residual functional capacity to do a range of sedentary work.  Specifically, she can lift, carry, push and/or pull a maximum of five pounds.  She must be able to sit or stand at will.  She is precluded from using ladders, ropes and scaffolds and can use occasionally stairs and ramps.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid all exposure to workplace hazards, such as unprotected heights and unprotected moving machinery.  She is limited to simple, routine, low-stress,

>    non public (meaning no interaction with the public) tasks with superficial interaction with supervisors and co-workers. . . . .
>
> 6. Ms. Cole is unable to perform her past relevant work . . . .
>
> 7. Ms. Cole was born on September 5, 1958 and she was 42 years old, a younger individual age 18-44, on the alleged disability onset date.  She is 48 years old, a younger individual age 45-49, as this decision is issued . . . .
>
> 8. Ms. Cole has at least a high school education and is able to communicate in English . . . .
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Cole is "not disabled," whether or not she has transferable job skills . . . .
>
> 10. Considering Ms. Cole's age, education, work experience, and residual functional capacity, there are jobs that exist in the national economy that she can perform. . . .
>
> 11. Ms. Cole has not been under a disability, as defined in the Social Security Act, at any time from November 1, 200 through the date of this decision . . . .

Tr. at 251-59.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists

of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

VI. Analysis

Cole claims the ALJ erred in (1) relying on the testimony of the VE and (2) not granting substantial weight to the opinion of Cole's treating physician with regard to all her physical limitations. The Commissioner denies that the ALJ committed significant error. Each of Cole's alleged errors shall be examined separately.

*A.     Whether the ALJ erred in relying on the testimony of the VE*

Cole contends that the ALJ erred in relying on the testimony of the VE because the jobs that the VE gave the ALJ as capable of performance by someone with the limitations in the ALJ's hypothetical require a full range of sedentary work. The hypothetical, however, described an individual capable of less than the full range of sedentary work. The ALJ failed to correct this error because the ALJ failed to ask the VE how her testimony corresponded with the DICTIONARY OF OCCUPATIONAL TITLES ("DOT"). According to Cole, this error requires remand to the ALJ. The Commissioner agrees that the VE gave the ALJ jobs requiring a full range of sedentary work and that the ALJ failed to ask the VE how her testimony corresponded with the DOT. The Commissioner responds, however, that because later questions addressed to the VE added the limitations that the VE had not earlier taken into account, the error was corrected. Because the error was harmless, the VE argues, remand is not necessary.

Agencies are bound to follow their own procedures. *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). If a court determines that the

15

Commissioner failed to follow agency procedures in ruling on a claimant's application for benefits, the court must then determine if that failure harmed the claimant. *Bass v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007). If the error was harmless, then the Commissioner should be affirmed. *Id.*

The Commissioner does not deny that SSR 00-4p requires an ALJ to ask a vocational expert to explain discrepancies between the expert's testimony and the DOT or that the ALJ failed to do so in this case. The Commissioner points out, however, that subsequent testimony cured the ALJ's error, making it harmless. Cole's attorney asked the VE if there would be jobs for someone who, in addition to a sedentary level of functioning, could not lift more than 5 pounds, required a sit/stand option, and needed a low-stress environment. The VE answered that about half of the jobs he had listed would remain. This leaves about 2,450 jobs in northeastern Ohio that Cole would be able to perform. This is sufficient to constitute a significant number of jobs within the meaning of the Act. *See Hall v. Bowen*, 837 F.2d 272, 274-75 (6th Cir. 1988) (finding 1,350 regional jobs to be a significant number of jobs within the meaning of the Act).

As later testimony cured the ALJ's error, Cole was not harmed by it. Thus, Cole's contention that the decision of the Commissioner should be overturned because the ALJ improperly relied on the VE's testimony is not well-taken.

*B.     Whether the ALJ erred in not granting substantial weight to the opinion of Cole's treating physician with regard to all her physical limitations*

Cole argues that the ALJ erred in failing to give substantial weight to Dr. Kravanya's opinions that Cole's prognosis for recovery was poor, she could not work an eight-hour day, she would continue to deteriorate with continued exposure to her job environment, and she

16

could not maintain employment. The Commissioner responds that the ALJ did give substantial weight to Dr. Kravanya's opinions in almost all respects and did not err where he failed to do so.

The opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983). This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir. 1988). Where there is insufficient objective data supporting the opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the factfinder may choose to disregard the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986).

Dr. Kravanya's opinions regarding Cole's inability to work an eight-hour day and her deterioration in response to her work environment were directed specifically at Cole's ability to function in her job at the post office. *See* tr. at 183, 185. They did were not addressed to Cole's ability to work generally. As the ALJ determined that Cole is not able to perform her past relevant work, these opinions do not demonstrate that the ALJ has erred in finding that Cole is not disabled.

Dr. Kravanya's opinion that Cole is not employable is an opinion solely within the province of the Commissioner. 20 CFR S 404.1527(e)(1). The Commissioner need not give substantial weight to that opinion. 20 CFR S 404.1527(e)(3).

17

The Commissioner also points out that the only respect in which the ALJ did not give substantial weight to Dr. Kravanya's opinion regarding Cole's functional capacity was with respect to Cole's postural capacities.  Dr. Kravanya opined that Cole could never or rarely balance, stoop, crouch, kneel, or crawl.  The ALJ found, however, that Cole could occasionally balance, stoop, crouch, kneel, crawl.  The ALJ explained this failure to give Dr. Kravanya's opinion substantial weight by noting that Dr. Krause's tests and other observations of Cole's postural abilities were inconsistent with Dr. Kravanya's opinion and that Dr. Kravanya had not ordered diagnostic tests, consultations, or treatment that would be consistent with her opinion.  These are reasonable justifications for departing from Dr. Kravanya's opinions.  Cole's arguments with respect to the ALJ's failure to give Dr. Kravanya's opinions substantial weight, therefore, are not well taken.

## VII.  Decision

For the foregoing reasons, the Court affirms the decision of the Commissioner and dismisses Cole's complaint.

IT IS SO ORDERED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: April 22, 2008